Your next case is number 23-10848 United States v. Eduardo Ulysses Martinez. Mr. Schuster. Joseph Schuster Good morning, Your Honors. May it please the Court. My name is Joseph Schuster and it is my privilege to represent the defendant, Eduardo Martinez, here. The main question presented today is whether the District Court denied Mr. Martinez a fair trial by, one, preventing Martinez from cross-examining the case agent on completing statements that were necessary to clarify and explain the admitted portions which completely misrepresented the tenor of Martinez's testimony. Let's assume that the District Court erred and I think you have a, for me, I think you've got a decent argument under the rule of completeness as to a couple of the statements, the sort of but statements after Mr. Martinez said yes or no to one of the agent's questions. But assume that there was some sort of error under the rule of completeness, some abuse of discretion. How is this error not harmless given the many statements from Mr. Martinez outside of the interview context in which he admitted that he knew that what he was doing was illegal? Your Honor, there's also, there was bad evidence presented during trial, but there was also a good deal of good evidence from Mr. Martinez showing that he did not have the mens rea necessary to be convicted of this crime. That includes that he sent pieces under his own name from abroad. He sent pieces of ivory by himself. Well, that's for, but that's not for the offense that was charged. He may have had a belief that at the end of the day he could have legally imported and exported those objects with, for example, ivory because they either met the antique exception or one of the others, the de minimis exception. But he's not charged with substantive smuggling offenses. He's charged with, he was charged with and convicted of failing to declare. You're right, Your Honor. And there's no evidence that I saw in the record where he expressed any belief that he was exempted from the declaration obligation. Your Honor, I would respectfully disagree in the first two statements that he made during, that we, that were excluded improperly during his post Miranda interview. He says he has no duty to declare and the government, where does he, where does he say that in the first two statements and addendum four to our brief and the government classifies it themselves as there's no duty to declare. So the first two statements I'm referring to are the key redacted statement one on page one of the addendum to the brief. And he says he doesn't say it exactly or as artfully as we would say it here. That's absolutely correct. But he can, he communicates that what he's saying that he didn't have a duty to declare. And I can read from the way that the government characterized it, asking the district court to exclude it, to support that. So I'm reading from a docket entry 192 page 55, the government's position that it would be my position. And this is referring to the first statement that I just discussed. It would be my position that this is him attempting to explain the distinction between new ivory versus old ivory and him providing a false explanation as to why it is he believed that he could bring these sculptures in. That's his belief. Your Honor, that's right. That's the bringing in offense, not the failure to declare offense. There's a big distinction between those two. He may have had every belief in the world that he could legally import and export these items. That is not the same as a belief that he did not have to declare them. And you're, I think you're conflating the two. Your Honor, again, I would respectfully disagree if he believes that he has the ability to bring these in without declaring them. That's good. You've added the without declaring them. There's nothing in his statements that says or even hints at his belief that he did not have to declare. Everything is about not having problems at the end of the day because they're either antiques or they meet the de minimis exception or whatever. Your Honor, if I could just again read how the government clarified. I don't want I don't want to know how the government clarified. I want to know his statements. Tell me the statement of his that was excluded by the district court that comes closest to saying I didn't believe that I had to declare these. What's the best one you have? Your Honor, on on that specific point again, I'd say everything that he says that he had the ability to bring it in and not have a problem shows that he believes he did not have a duty to declare. If he believed he had a duty to declare, he would have a problem if he brought it in and did not declare it. That would be a problem, Your Honor. Mr. Schuster, he took he took these things apart. He mailed them in pieces. Sometimes detection that that's one interpretation. Why would you why would you take a sculpture apart and send it in in pieces if you were not trying to hide what it really meant as a unified whole? Well, Your Honor, let's also look at what he did on the date of his post Miranda interview. He brought it in in his suitcase wrapped in tissue. This wasn't hidden. Every smuggling case that this court hears, someone smuggles it. They're hiding something in the lining of a suitcase. They're hiding something in themselves. They're doing some other step to hide. And he said it was porcelain. There are there are statements that are bad evidence, Your Honor, that we can't get around. But the fact is that he had a good faith defense under the jury instructions here. He was allowed to present evidence of his belief is honestly held belief and mistake. The district court refused to allow him to do that. And these statements taken in whole and the entire tenor of this interview says I'm not going to have a problem if he believed he had a duty to declare and he didn't. That would be a problem, Your Honor. But that's not what he said. He said repeatedly no less than six times. I'm not going to have a problem. And the government admitted that what he's saying is his belief about his duty to declare. Regarding statement one, you've relied on the packet case, if I've stated that correctly. But weren't the facts there much more egregious where the defendant had disclaimed the cocaine that had been found in his bag? And to add insult to injury there, the trial judge told the jury to disregard any mention about the contents of the bag because it had not been admitted into evidence. Those facts are much more egregious than what we have here. Your Honor, again, I respectfully disagree. I think that these are very analogous and right on point in pocket. This is not my cocaine. In our case, Martinez says six times I didn't. I'm not going to have a problem because what I'm doing essentially because what I'm doing is illegal. That was all kept from the jury. What was egregious in our case also was at the end of the test. The case agent's testimony on that interview, the prosecutor says, did Martinez say that he had anything to correct during his statement? And the case agent says no, leaving the impression that throughout that whole time he was just it was only an admission and that he wasn't practically jumping up and down saying I did not break the law because this is antique ivory. That's directly analogous to the situation in Paquette where his statement was excluded. This is not my cocaine. They're the same thing, Your Honor. He's just saying, yeah, I thought I could do this. Why is that in the rule of completeness? Why do you need to have that in? Because, Your Honor, that was one of the elements that the government had to prove that he knowingly did this. So it is a factual issue. The fact that he knowingly failed to follow the form, right? That he knowingly failed to follow the regulations and file the form, that knowing that is against the law, that he did something against the law. So in Paquette, he said that he did not have the cocaine. In our case, Mr. Martinez said that he had no legal duty to declare because it was antique ivory. So that's a factual issue that the jury had to decide under the jury instructions. You keep saying that that may be an inference, but that's not what he said, Mr. Schuster. Your Honor, he did not say it as as clearly as we would have liked, but if somebody wouldn't have had any problem in the end, which means no problem with the actual importation. It has nothing to do with declaration. The declaration requirement applies to stuff that can be legally imported and stuff that can be illegally imported. It doesn't matter whether or not the importation in and of itself was legal. You've got to declare. Your Honor, that's correct, and that's not what we're arguing here. We're arguing that he did not have the mental, the criminal intent to violate the law based on his understanding of the Code of Federal Regulations, which were excluded by the district court as well. That's the antique and de minimis exceptions that the district court excluded in the motion in Lemonet before. You want to talk about some of the other issues? Yes, Your Honor. We'd also, in addition to asking to remand for a for a fair trial, we also raised the sentencing issue here. denied Mr. Martinez due process by saying that he would be allowed to have an evidentiary hearing. He would be allowed to present a witness. There is no evidence in the record that Judge Martinez actually considered the expert witness report, which valued the the ivory at much less than was ultimately given in this case. He said the district court said that it didn't need any further evidence. How do we, how are we to interpret that? Well, I think at the first, at the initial stage of the sentencing, Judge Martinez said, listed the things that he considered during his, to consider to impose the sentence, and one of those was not the expert report, which valued much lower than what the government valued and the pre-sentence investigation report valued the ivory sculptures at. Also, the fact that these sculptures were valued based on the artists who created them and not the actual contraband. These things were mostly made of bronze and marble with a very small part of ivory. The probation office demonstrated that they were able to value the ivory separately. As Your Honor pointed out earlier, the government proved that Mr. Martinez separated these many times and sent them in. Now he's being punished for the full value of a completed sculpture based on the notoriety and fame of the artist. But your expert also took into account the full sculpture, right? Yes, Your Honor. So you didn't try to, well, I'm not sure that you at sentencing tried to argue that the guidelines should be based solely on the value of the ivory, right? That's correct, Your Honor. Okay. So the contention is that you, the government presented its value as to these sculptures, which contained ivory, and then your expert valued them differently and the district court failed to consider that valuation. That's correct, Your Honor. But this court could also look de novo at the actual valuation because our position is that the notoriety and fame of the artist plus the materials that have nothing to do with contraband are what inflated the value, which was the primary driver of Mr. Martinez's sentence and why he received a 51-month sentence as opposed to something far lower if the court was just looking at the issue of the contraband, which was the ivory. Nothing to do with bronze, nothing to do with marble. As the court noted, these pieces were sent separately on many occasions, so this would have been something where the court could have, so it was an improper factor that the court was driving. And this court can make precedent that in a case like this, which I've not been able to find anything in this type of scenario in the artistic realm where there is contraband that is combined with other pieces ultimately, that it should be the contraband that is punished and not the notoriety of the artist. One more question so that the government's attorney can address it too. The prosecutor made what I think was an improper statement during closing, but there was no objection. How are we to treat that under the plain error standard? Again, Your Honor should look at the, under plain error standard, look at the entirety of the trial and look what was presented, but also looked at what was not presented. And our position is that the government misrepresented the actual tenor of what Mr. Martinez said throughout that interview. That was a powerful piece of evidence that the government used. So looking at all of that, combined with the government saying he has now lost his presumption of innocence, he is guilty as charged with misrepresenting that he admitted to violating the law and his duty to declare, which he did not do, which the government admits when they characterize what he said he did not do. This court can reverse based on that as well. All right. Thank you very much. You've saved your time for rebuttal. Thank you, Your Honor. Mr. Stockman. Good morning. May it please the court. I'm Robert Stockman representing the United States. We ask this court to affirm the conviction and sentence. I will focus on the issues that came up in the opening. But I'd like to step back and just emphasize these declaration requirements are very important to maintaining, regulating wildlife as it comes into the United States, and in particular to ensuring that the ivory trade does not, the fueling of this ivory trade doesn't incentivize poaching abroad. And it's exactly the review and assurance that these are actually, they could be imported that's so important. So the violation of declaration requirements has significant impacts in the world. On this first and I think primary evidentiary issue, it's reviewed for an abuse of discretion. The Tenth Circuit has described it as enormous discretion on the rule of completeness because of the very nature of the fairness inquiry. In our view, the district court was correct and didn't abuse his discretion. And I think the fact that the statements don't clarify or qualify his statements about the declaration on their own goes directly to that, right? I mean, the problem for defendant here is these statements that most seem to be saying old things are different, new things. I'll have no trouble at the end. But they don't speak to what the government had introduced. But there are also, Mr. Stockman, cautionary statements after a definitive statement of I do or I know. So when you ask a person a yes or no question, and the person says yes or no, but then immediately follows with a but, that but is usually important in understanding the yes or no answer. And it seems to me, I speak only for myself, that at least with regards to the first two statements, they fall into that category. Now, they may not have been enough to let him get an acquittal from a jury. But that's a very different question from whether or not they should have been admitted in the first place. The first one he says, you know, do you know the declaration requirements? Yes, but I've had cases, so forth and so on. The second one, the agent asked him whether he understands everything about CITES. And he says, yes, but I do, but I also understand that. So those two, it seems to me that they're inextricably intertwined with his declarative answers. I don't know how you take those out and exclude them. So first, I don't agree with that analysis, though I understand Your Honor's point. But I think it's important first to think about this in the context of the trial, right, where the defense submitted a transcript with tons and tons and tons of highlights saying all of this comes in under completeness. And the district court ruled, no, it doesn't. And I think to now tease out one statement and say, oh, wow. But the district court ruled on each one. Yes, but I do think it's important. You can't blame the defense for that. It's not like they made a general statement. Everything he says comes in. But they did. No, they told him these statements. They're entitled to do that, whether they're right or wrong. They tell him these 20 additional statements come in under the rule of completeness. You object. And the district court rules on every single one. So it seems to me that it's fair game for them to highlight a couple of the ones that they preserve their objection to below. You may think they're wrong on the merits, and that's fine. But so turning to that procedurally improper, I think this statement one is the closest in my view. And it's very telling. He says, I've had cases of clients that have taken pieces there at customs. They've been held with complete figures, and they've proven that the piece is over 100 years old, and they've not had any problem. That's completely consistent with him having a declaration requirement. That's how it's supposed to work. You declare that you have the object, and then you prove it meets whatever requirements to bring it into the country. So the problem is to make something of this, to make it go to what they want it to, you have to project a lot onto that statement. You have to expand on it a lot. And I think the point of Rule 106 and the rule of completeness is that the statement itself is supposed to qualify or clarify what came before. And this statement standing alone doesn't do that. What would be required is for the defense to then say, and this is what he meant by that, which is not the point of Rule 106. So in my view, that doesn't come in on that basis. But even assuming it did, I do think there's harmless error here. Because there was just overwhelming evidence that he knew he was acting contrary to law that was presented to the jury very robustly throughout the whole trial. And we provided the court with many examples of that evidence, but to be clear, we didn't put everything in our supplemental appendices. He never lists ivory on his invoices. He never lists ivory in the receipts. He never puts ivory on his websites. He arranges for them to be shipped to other people to conceal that it's coming to him. And then in multiple conversations, and I do think these are the strongest, he says things like, don't tell anyone about this object because it's illegal if you bring it from abroad. He's talking to someone in Argentina. He's like, if you tell people that you have this, then they'll tell everyone you can't buy it because it's illegal. You can't bring it from abroad. So he was quite aware that he was acting contrary to law. And I think the statements, to the extent they speak to anything, they go to the thing he wasn't charged with, whether he could bring them at all. They don't really speak to any declaration requirements. So one, they aren't really relevant to his knowledge that he had to declare. And two, we know he knew he was acting contrary to law throughout his course of conduct, throughout his many statements to other people. And ultimately, I don't think there's any way this isn't harmless error looking at the trial as a whole. And on the point of was he allowed to make his case about this, I mean, in closing, he did talk about the antiques exception. The judge gave him reasonable latitude to cross-examine people on various issues. What the judge didn't do is let him try to change the case into a case about what he wasn't charged with. I mean, I think that's the main upshot to that question. I think that's a reasonable decision of the judge to try to manage the case in a way that would allow for the correct determination to be made here. What is the overlap in your mind, I guess? Because so the judge says he grants, I think, your motion, Lemony, that says he's not allowed to introduce evidence of the de minimis exception and the antique exception. And then as part of that, it seems to me, is his basis for ruling on these statements. What's the connection, I guess, between those two things? I think there's a minor connection, but not a substantial one. I think the judge understood the rule of completeness quite well. Looking over the transcript, he's like, that doesn't go to this. That doesn't qualify. That doesn't clarify. And I think the main question at the rule of completeness stage is, does this come in under the rule of completeness? I do think the judge was informed by the fact that the defense had signaled it wanted to try to try a different case. And I think the fairness inquiry under the rule of incompleteness gives district court judges substantial discretion to weigh various aspects. But ultimately, I don't think the court, for example, did not say, oh, no, I ruled this can't come in. So you can't get it under the rule of completeness. He rather said this doesn't come in under the rule of completeness. I mean, I guess I mean, I think I think you're probably right. It's sort of a formalistic matter. But I mean, when I look at these statements, I mean, statement one, Martinez says the problem is with new ivory, Chinese things and the like. That is the real problem because they are made of new things. Right. That statement. I mean, I get that he was trying to get that in that rule of completeness. But that would have interjected the ante exception, which the judges said you're not allowed to put evidence in for. Yes. And I'm sure that was the judge was aware of that. I mean, I think one thing to keep in mind is the government was trying to be considerate of the juror's attention and the court's time and chose six segments from a lengthy interview. And the question becomes, can the defense force the government to bring this in under the rule of completeness? Does fairness require it? And I don't think they met their burden to show fairness required this or that the judge abused his discretion in saying it didn't. Particularly given the nature of that inquiry, it's it involves so many different factors. But but also. So I think it's important to remember that there was a lot else going on here and not playing the whole interview. Right. There's there's a number of things he sought to bring in that don't even relate to this at all. So there was a goal of the government to present the case in a way that would be understandable to the jury. And I think that is a reasonable goal for the government to have in making it shift over to sentencing for a moment. Yes, your honor. Valuation here. Both sides agreed, it seems to me. And they agree on appeal, too, was based on the entire amount, the amount of the entire figure or figures. Right. Not just the ivory. It was based it was based on the amounts. So and on the of the figures. And to be clear, I think it's important to look at how we valued it. Right. If he sold it, we based it on what he sold it for. If he advertised it, we based on what he advertised for. I'm not I'm not taking aim at how you got to valuation. But everybody agreed that if you had a sculpture which was adorned with ivory, you took the value of the entire piece of sculpture. Yes. Not just the ivory. Right. Yes. So that that's a starting point. Everybody agreed. Tell me how you think that the district court considered Mr. Martinez's valuation expert. So Mr. Martinez's expert report had been provided. The district court asked for input from the government and the government summarized parts of the report. I think the district court had looked at it, but the government also, I think, accurately summarized and said this report, you cannot rely on it. For example, this person says this art piece, not not the ivory in it, just the art piece is worth four thousand four thousand four hundred dollars. But Mr. Martinez bought it for forty thousand dollars. He sold it for sixty thousand dollars. And this was not an isolated incident. It's like aspect of piece and piece in the report was just massively undervalued compared to what Martinez had purchased it for and or sold it for. Right. So I think you've got good answers to some of the valuation estimates provided by Mr. Martinez's expert. But the district court doesn't list the report as one of the things it considered. And then at another point, it says I don't need any evidence. Well, but how are we to take those statements? The district court said he accepted the report. He said he accepted it. Accepted it for what? I mean, I think he he accepted it into evidence, but he did not decide to rely on it. And what he said is I'm not going to allow you to bring on this expert to testify, which I think is well within the district court's discretion to say you can't bring in this expert to testify. But importantly, the district court rejected it because he repeatedly said this is ridiculous. And respectfully, it is a bit ridiculous. Right. Martinez is a sophisticated art dealer who's made a lot of money selling and buying these objects. And then he's saying, actually, all of that is just not correct. I didn't know what I was doing. All these buyers didn't know what they were doing. And I think it's appropriate for the district court to say I'm not going to rely on a report that just contradicts everything that was shown at trial. And, you know, multiple courts have said that this court has said that the market value of something is often the right value. And what it actually sold for is often very good evidence of the market value of something. And a smuggler can be held responsible for what he sold his purchases for. Right. And then on the issue of the trying to disentangle, that just wasn't presented to the district court. And I'm not aware of any theory for which you could somehow disentangle the worth of the ivory from the object. And usually usually the principle in criminal law is that if a criminal mixes a legal substance with an illegal substance, then that's the criminal's fault. And you just take the whole thing. Yes. Yes. And Norris said that. And in fact, in some ways, Norris was a harder case for the government to argue that because you because it wasn't inherent to the things mixed together that they couldn't be sold separately. Right. Whereas here you wouldn't buy a stray face without the rest of the object. And then I will end on the prosecution statement. I heard your honor say which statement was it your honor considered because they raised to improper. The worst one. The no longer presumed in the one. Ladies and gentlemen of the jury, the defendant is no longer presumed innocent. The defendant stands you before stands before you guilty as charged in the superseding indictment. Well, that was improper. I don't know why it was said, you know, we don't get statements like that often, thankfully. But let me tell you. If that start and you I know you are not the prosecutor below, so this is not directed at you. But. If statements like that are seen in the future, again, I speak only for myself and not for my colleagues. We're a multi member court and everybody has different views about these things. I will not hesitate to mention the prosecutor by name in an opinion and refer that person to a bar. I understand your honor. I mean, this is not this is not a question of inferences or whatever. I mean, this is a blatant statement about ignoring the presumption of innocence before the jury has even retired to consider a verdict. I understand your honor. I think it is important. There was no contemporaneous objection. And I want to emphasize because it would have been corrected immediately. Right. I mean, it would have been one would hope. Yes. Yes. So I think I think that is important. And I think it's important to. The result of this appeal, because we're reviewing for plain error, but it does not affect the propriety of the comment, in my opinion, I, I fully understand your honor. I mean, so the way I read this comment is it's a misstatement of something that prosecutors usually say a closing argument, which is usually they say something like. You know, the defendant has a presumption of innocence, but we have rebutted that presumption with the evidence we presented, the defendant has been proven guilty. Right. That's usually that's like the correct formulation of the statement. And here the prosecutor just didn't really formulate it the right way. That is how I have read it, your honor. And I want to emphasize, I do think it is important to look at the entire closing. Right. Because the entire closing is consistent with that other reading. Right. This was not a focus of the closing. Right. It was the entire closing is about going through each piece of evidence. And in fact, the prosecutor repeatedly says, you know, listen to the judge, follow the judge's instructions. And of course, the judge correctly told them the government bears the burden of proving guilt beyond a reasonable doubt. So I think that must have that that's always been my understanding of the state. Can I ask another question about this? I've had this happen in multiple cases where there's been a misstatement by a judge. You know, one of them was a very strange case where the judge had said in the in the instructions that the defendant is presumed guilty. And the court reporter went back and looked at the what the actual. And there was no objection, which once again is sort of like, why would you not object to that? That's crazy. And the court reporter went back and listened to it. And it was just a mistranscription. Has anybody done that in this case? I have not actually, your honor. And that's that's a I won two cases in this court by going back and looking at the. So I would I would I think that might be a good idea. I should have done that. I apologize, your honor. It's possible. That's what happened. And I just want to emphasize that I do think overall it resulted in no prejudice because the jury was very correctly instructed. The government's closing overwhelmingly focused on the robust evidence that it provided of his guilt. And I think I think ultimately it doesn't change. It doesn't merit a reversal here. Certainly. Unless there are any further questions. No, I don't think. Thank you very much. Thank you. We asked this court to affirm. If it please the court, my name is Neil Schuster and it's my privilege to appear before this court. We thank you for giving us the opportunity for oral argument. Your honor focuses on whether there was a fair trial, whether the plain error rules should apply. So let's talk about what happened at the very first day of trial. Judge Martinez had ruled in the motion in limine that the antique exception is not going to be mentioned, not going to be come up at trial at all. And defense counsel, what did he say? Judge, I'd like you to reconsider its ruling because it's precluding us from raising a meritorious defense, which is mistake. What does the judge say? It isn't a meritorious defense, even though seven days later he instructed the jury that a mistake is a defense. Why did the government fight so hard to keep out Mr. Martinez statements that completed, that explained, that qualified? Why? They say because his statements go to whether or not the substantive importation or exportation would have been legal and not to whether or not he had a duty to declare. Your honor, they specifically say, and I know Judge Brasher was talking about how to interpret what the prosecutor meant. Well, the prosecutor in this case clearly said that she was fighting to keep out exculpatory evidence because it went to the issue whether he knew he had to declare, which is a mistake, which is something that Judge Martinez on the first day of trial said you cannot use as your defense. Did Martinez have a fair trial when Judge Martinez ruled that he could not use mistake as a defense and the government labored hard and well to make sure that no exculpatory portions of a 40 minute statement came in? And the district court judge had a chance point by point to review every statement. So the interpretation of the prosecution was this was exculpatory. It went to the duty. It went to the issue of duty. The Supreme Court has spoken on this issue. The Supreme Court said that it doesn't matter how ridiculous your belief might be. And I'm talking about the Supreme Court case in Cheeks. It's not contrary to common sense, let alone impossible for a defendant to be ignorant of his duty based on an irrational belief that he has no duty and forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision. That's Cheek 498 U.S. at 203. Your Honor asked questions about the fairness of the trial and the plain error rule. Well, let's take a look at the trial from the entirety, from the beginning. The judge said you have no defense when the defense. I'm not going to cut you off midstream, but you're over your time. So my apologies. No, no, no. I don't want to cut you off. You've got about a minute to wrap up. If the court is inclined at all to reverse or remand, we have a bond motion pending. And in terms of the obstruction conviction, we would respectfully invite the court to look at docket entry 198, the language from page 160 to 164, because I don't believe that sustains a conviction for obstruction. We're talking about something that happened in March of 2020. And in the case of United States v. Vagila, V-A-G-H-E-L-A, not cited in the brief, 169, Fed 3rd, 729, there's a sufficiency issue as well. I thank the court for the opportunity. I wish I would have set more time for rebuttal. That would have only eliminated more time on the front end. It's a balancing act, Mr. Schuster. So I know all of you do the best you can with limited time. But you have all of the issues preserved in the brief, and we'll consider them all. Thank you. The bond motion, as you note, is pending. But the view was that it was better to hold that bond motion at least until we had argument in the case. Absolutely. Thank you, Your Honor. Thank you very much. Thank you.